# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5337 | **DATE** | 4/14/2003 |
| **CASE TITLE** | Edward Giard vs. William F. Powers, II | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 29 Apr. 03 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's Motion for Summary Judgment is GRANTED as to Count One, DENIED as to Count Two, and GRANTED as to Count Three. Defendant's Motion is DENIED AS MOOT as to the Breach of Fiduciary Duty claim, because plaintiff does not raise such a claim in his amended complaint. Plaintiff's Motion for Summary Judgment is DENIED as to Count Three.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 1 5 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 35 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
APR 1 4 2003

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

EDWARD GIARD,

    Plaintiff,

v.

WILLIAM F. POWERS, II,

    Defendant.

Case No. 00 C 5337

Hon. Harry D. Leinenweber

DOCKETED
APR 1 5 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Edward Giard ("Giard" or "Plaintiff"), a resident of Vermont, filed a three-count amended complaint against Defendant William F. Powers, II ("Powers" or "Defendant"), an Illinois resident, alleging breach of contract, fraud, and promissory estoppel. Before the Court are Powers's Motion for Summary Judgment on all counts and Giard's Cross-Motion for Summary Judgment on the promissory estoppel count. For the following reasons, the Court grants Powers's motion in part, denies it in part, and denies Giard's motion.

## BACKGROUND

Except as noted, the following facts are undisputed for purposes of summary judgment. In January 1988, Powers incorporated Profile by Design ("Profile" or "the Company"), a company that designed and manufactured aerodynamic bicycle handlebars and other bicycle components. Powers recruited Giard, a college friend, to help him with the company and in the spring or early summer of 1988, Giard

joined Profile. The two men developed a partnership, with Giard focusing primarily on product design and manufacture while Powers handled the financial side of the business. Powers, who was the sole shareholder of Profile at incorporation, eventually issued additional stock and gave Giard 10,000 shares as repayment for a $10,000 loan he made to the Company. Powers retained 80,000 shares.

Profile struggled somewhat in its nascent years. The parties dispute Profile's exact earnings figures, but it appears from tax returns that while Profile's sales increased quickly, the company lost money in 1989, enjoyed some income in 1990, and lost money in 1991. In 1991, Giard and Powers considered selling Profile and its assets. In light of the potential sale, Giard and Powers had heated conversations about the amount that Giard would receive if they did sell Profile. Finally, in mid-1991, Powers presented Giard with a handwritten note, attached to Giard's amended complaint as Exhibit A ("Exhibit A"), which reads as follows:

> Ed,
> You are right - the signature below makes it official in writing. This paper supercedes any contracts on ownership signed. Edward H. Giard will recieve *[sic]* 20% of the proceeds from the sales of Profile for Speed, Inc.
>     *[signed]* William F. Powers, II
>                President

Despite discussions with several potential purchasers, Giard and Powers failed to sell Profile, and on December 31, 1991, Giard

resigned from the Company. He retained his shares, and continued to perform consulting work for Profile for a limited period of time.

In a deal with Colvin Hsiao that began in March 1998 and concluded in July 1999, Powers eventually sold his 80,000 shares of Profile for a purchase price of $2,180,000.00. On May 11, 1998, Giard entered into an agreement with Mark Pikula ("Pikula") regarding his 10,000 shares of Profile stock. While Giard did not technically sell his stock, he agreed to deliver the certificates to Pikula, to vote his stock as Pikula directed, to transfer any dividends to Pikula, and to refrain from assigning or encumbering the stock. Pikula paid Giard $50,000 for these rights, and retained the option to purchase the stock for an additional $100. A year later, however, Pikula exercised his right to rescind the deal, and on June 23, 1999, Giard repaid Pikula $50,000. As a result, Giard currently owns his shares of Profile. Neither Giard nor Powers ever shared the profits of their respective agreements with the other party.

Powers' failure to share the profits of his stock sale with Giard forms the basis of Giard's lawsuit. At the heart of the dispute lies Exhibit A, the 1991 note from Powers to Giard. Giard claims that Exhibit A constitutes an agreement that entitles him to twenty percent of Powers's proceeds from his sale of Profile stock. Giard asserts that Powers's failure to provide him with any portion of such proceeds is a breach of contract and grounds for fraud and promissory estoppel actions. Powers, in turn, argues that the circumstances surrounding Exhibit A demonstrate that it was only

intended to govern sales of stock in 1991, when Powers and Giard were actively negotiating the sale of the business. Powers contends that Giard ignored Exhibit A in his own business dealings, and only raises it now that Powers has rebuilt the Company and sold it for a substantial profit. Powers has now filed a motion for summary judgment on all counts while Giard has filed a cross-motion for summary judgment on Count Three, Promissory Estoppel. It should be noted, however, that Powers's motion for summary judgment erroneously references Plaintiff's original complaint, not his amended complaint. Accordingly, this Court will only address those of Powers's arguments that relate to existing counts.

## **DISCUSSION**

### *Summary Judgment*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In assessing the movant's claim,

the court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmovant. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations" contained in its pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir. 1989). It "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### *Count One - Breach of Contract*

In Count One of his amended complaint, Giard alleges that Powers breached the terms of their 1991 agreement when Powers sold his Profile stock without providing Giard with any portion of the profits. In his motion for summary judgment, Powers contends that Giard provided no consideration for the 1991 agreement and that, therefore, the agreement does not constitute a valid contract. Both Powers and Giard agree that the original consideration for the agreement was the work Giard had performed prior to the agreement and the work he would perform going forward. The parties also agree that the work Giard did for Profile prior to the agreement may not serve as consideration for the promises set forth in Exhibit A. *See Johnson v. Johnson*, 614 N.E.2d 348, 355 (Ill. App. Ct.

1993)(explaining that where consideration was "conferred prior to the promise upon which alleged agreement is based, there is no valid contract.") Where the parties differ is on whether Giard's promise to continue to work for Profile was adequate consideration for a valid contract in light of his resignation several months after receiving Exhibit A. As this Court noted in its order striking Defendant's Affirmative Defense, the mere promise to perform future acts constitutes consideration for an agreement even if the party does not actually perform those acts. *See Gage v. Lewis*, 68 Ill. 604 (1873); *Keller v. Hyland Builders Corp.*, 186 N.E.2d 787, 789 (Ill. App. Ct. 1962). Giard's promise to continue working for Profile was adequate consideration to support the agreement under Illinois law.

Powers makes no additional arguments in support of his motion on this claim. As a result, this Court would ordinarily deny his motion for summary judgment on the breach of contract claim. "The existence of a contract," however, "is a question of law for determination by the court." *Habighurst v. Edlong Corp.*, 568 N.E.2d 226, 229 (Ill. App. Ct. 1991). Under basic principles of Illinois contract law, an enforceable contract must contain "definite and certain essential terms." *Acad. Chicago Publishers v. Cheever*, 578 N.E.2d 981, 983 (Ill. 1991). In the instant case, Powers promised to provide Giard with twenty percent of the sales of Profile. In return for this agreement, Giard promised to continue his involvement in the company. As is discussed more fully below in the analysis of Giard's

promissory estoppel claim, the term "sale" is neither definite nor certain. Furthermore, the contract is not at all clear as to what Giard was required to do to meet his end of the bargain. Indeed, the controversy between the parties centers precisely on this question. Did Giard satisfy the terms of the contract by staying with Profile for a few months after receiving the contract or did the contract require his employment through the sale? Would Giard have fulfilled his contractual obligations had he stayed for one day after receiving the contract? Was he required to continue his involvement with the company until retirement? "[I]f the essential terms [of a contract] are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Cheever*, 578 N.E.2d at 984.

The uncertainty of the obligation is underscored by Giard's own concession in his motion for summary judgment that "the undisputed facts establish that no meeting of the minds occurred" on his obligations under the agreement (Pl.'s Mot. for Summ. J. at 2). While he abruptly argues in his reply brief that it is *disputed* whether the requisite meeting of the minds occurred, (Pl.'s Reply Br. at 1 n.1), the facts support his earlier concession. Under Illinois law, a binding contract requires "a meeting of the minds or mutual assent as to all material terms." *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999). The agreement between Powers and Giard, therefore, is not a valid and enforceable contract.

This Court must proceed with special caution when granting summary judgment *sua sponte*. *Sawyer v. United States*, 831 F.2d 755, 759 (7th Cir. 1987). If the opposing party has had the chance to be heard on the issue, however, a district court has the authority to grant summary judgment. *Id.* In light of Giard's concession that the parties reached no agreement on the meaning of "continued involvement," it is clear that the agreement in question is unenforceable and invalid. Therefore, granting summary judgment to Powers on the breach of contract claim is warranted.

### *Count Two - Fraud*

In Count II, Giard charges that Powers made false and untrue statements regarding Giard's receipt of proceeds from the sale of Profile. Giard argues that he relied upon these statements to his detriment and was denied the profits to which he was entitled under the agreement. Once again, Powers carelessly moves for summary judgment on Giard's original complaint and, therefore, his arguments are inapposite to Giard's actual allegations. Powers contends that Giard's complaint fails to identify a statement of material fact that is untrue and that Giard, therefore, fails to prove the first element of a fraud claim. In his amended complaint, however, Giard bases his allegations of fraud on entirely different statements from those contained in his original complaint. Powers utterly fails to meet his burden under *Celotex*, and as a result, his motion for summary judgment on the fraud claim is denied. *Celotex*, 477 U.S. at 323.

### *Count Three - Promissory Estoppel*

The parties file cross-motions for summary judgment on Giard's third court, which alleges promissory estoppel. The doctrine of promissory estoppel permits a plaintiff to recover in the absence of a contract. *Ill. Valley Asphalt, Inc. v. J.F. Edwards Constr. Co.*, 413 N.E.2d 209, 211 (Ill. App. Ct. 1980). Given this Court's determination that no valid contract existed between these parties, Giard is free to argue this theory. The same problems of ambiguity and indefiniteness that sunk Giard's contract claim, however, are fatal to his promissory estoppel claim.

In order to prevail on a theory of promissory estoppel, Giard must establish that: (1) Powers made him an unambiguous promise; (2) he relied upon that promise; (3) Powers would have expected and foreseen Giard's reliance; and (4) he suffered an injury as a result of his reliance. *Id.* In determining whether a party has detrimentally relied upon a promise, the Court looks at the individual facts of each case. *Chicago Limousine Serv., Inc. v. City of Chicago*, 781 N.E.2d 421, 429 (Ill. Ct. App. 2002).

Giard contends that Exhibit A constituted an unambiguous promise by Powers to provide Giard with twenty percent of the profits of the sale of Profile. In trusting this promise, Giard argues, he left Profile without securing his twenty percent ownership in the company and, therefore, has lost both his ownership stake in Profile and the profits he should have received from the sale of Profile stock.

This Court need not reach the issues of reliance or damages because Powers's promise does not meet the doctrine's prohibition against ambiguity. Exhibit A failed to constitute a valid contract because it failed to set forth any terms for Giard's compliance, making it impossible to determine whether Giard breached the contract by leaving Profile when he did. Similarly, the statement that Giard "will receive [sic] 20% of the proceeds from the sales of Profile for Speed, Inc." fails to define any of the relevant terms and, therefore, the promise itself is neither clear nor unambiguous.

First, the statement gives no definition of its most critical term, the word "sales." Due to the pluralization of the word sale ("twenty percent of the *sales* of Profile for Speed, Inc."), a plain reading of the promise suggests that it governs not the sale of the company, but product sales. Under this reading, Giard is entitled to twenty percent of the sales of Profile handlebars and bicycle parts but has no claim over proceeds from the sale of the company. Even if the Court reads the promise as pertaining to the sale of Profile, it is entirely unclear what constitutes a sale. A study of *Black's Law Dictionary* confirms that this word is not self-defining and is susceptible to many meanings. Indeed, *Black's* devotes several pages to the meaning of "sale." *Black's Law Dictionary* 1337-39 (6th ed. 1990). One definition *Black's* provides is that a sale requires "the passing of the general and absolute title," *id.* at 1337, which, in the corporate context, would mean the sale of all of Profile's shares. "Sale," however, could also mean the conveyance of the

majority interest in Profile. Powers even suggests that had Giard sold his shares, such a transaction would have constituted a "sale" under the promise, despite the fact that Giard only held an eleven percent interest. Under any definition, this would only hold true if "sale" meant sale of stock, however, it is impossible to ascertain from the promise whether stock sales are included in its scope. Indeed, "sale" could mean sale of Profile's assets, or even of just one asset. The parties' quibbling in their briefs about whether the sale of options was governed by the promise provides yet another possibility. When a promise allows for such a range of viable interpretations, the one thing it cannot be construed as is unambiguous.

Furthermore, the statement fails to provide any insight into the duration of the promise. In promissory estoppel cases in the employment context, courts have held that where the duration of a promise is a matter of speculation, the promise is ambiguous and fails to satisfy the requirements of promissory estoppel. *See, e.g., Schoeneck v. Chicago Nat'l League Ball Club, Inc.*, 867 F. Supp. 696, 702-03 (N.D. Ill. 1994); *James v. W. N.Y. Computing Sys., Inc.*, 710 N.Y.S.2d 740 (N.Y. App. Div. 2000). In the absence of a specific expiration date, Giard is asking this Court to find Powers's promise to be enforceable indefinitely, or at least, to find it enforceable for almost nine years. The court in *Schoeneck* refused to interpret a lack of specificity as evidence that the promise in question stretched out for the entirety of the plaintiff's life. This Court

rejects Giard's similar call for a speculative reading and, therefore, finds that Giard cannot satisfy the first element of his promissory estoppel claim. Accordingly, Giard's promissory estoppel claim must fail. Giard's motion for summary judgment is denied and Powers's motion on this claim is granted.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED** as to Count One, **DENIED** as to Count Two, and **GRANTED** as to Count Three. Defendant's Motion is **DENIED AS MOOT** as to the Breach of Fiduciary Duty claim, because Plaintiff does not raise such a claim in his amended complaint. Plaintiff's Motion for Summary Judgment is **DENIED** as to Count Three.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: April 14, 2003